# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 116

APRIL TERM, A.D. 2015

August 26, 2015

GARY C'HAIR and ROCHELLE C'HAIR,

Petitioners,

v.

DISTRICT COURT of the NINTH JUDICIAL DISTRICT, State of Wyoming,

and

JOHN STROHECKER,

Respondents.

S-14-0198

***Original Proceeding***
***Petition for Writ of Review***
***From the District Court of Fremont County***
**The Honorable Norman E. Young, Judge**

*Representing Petitioners:*
　　James C. Worthen and Andrew F. Sears of Murane & Bostwick, LLC, Casper, WY.  Argument by Mr. Worthen.

*Representing Respondent District Court of the Ninth Judicial District:*
　　No appearance.

*Representing Respondent John Strohecker:*
　　Aaron J. Vincent of Vincent Law Office, Riverton, WY.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

* Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.

**HILL, J.**, delivers the opinion of the Court; **BURKE, C.J.,** files a dissenting opinion.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Plaintiff, John Strohecker, a non-Indian, filed a complaint in state district court against Defendants, Gary C'Hair and Rochelle C'Hair, both enrolled members of the Northern Arapaho Tribe, for injuries sustained in a vehicle accident that occurred on Wyoming Highway 789 within the boundaries of the Wind River Indian Reservation. Defendants filed a motion for summary judgment asserting that the district court lacked subject matter jurisdiction because Defendants are members of the Northern Arapaho Tribe and the accident occurred on the reservation. Defendants also asserted that the two-year statute of limitations dictated by the Shoshone and Arapaho Law and Order Code should apply to bar Plaintiff's action. The district court denied Defendants' summary judgment motion, and Defendants filed a petition for writ of review in this Court. We granted the petition and now affirm the district court's decision.

## ISSUES

[¶2]    Defendants state the issues for our review as follows:

> Issue 1 – Does the Ninth Judicial District Court lack subject matter jurisdiction over [Defendants] Gary and Rochelle C'Hair pursuant to the case of *State ex rel. Peterson v. Ninth Judicial District*, 617 P.2d 1056 (Wyo. 1980)?
>
> Issue 2 – Are [Plaintiff] Strohecker's claims time barred pursuant to Wyoming Statute Section 1-3-117, *Lex Loci Delicti* and the Shoshone and Arapaho Law and Order Section 1-8-6, Limitation of Civil Actions?

## FACTS

[¶3]    On July 27, 2009, Plaintiff, John Strohecker, who is a non-Indian resident of Riverton, Wyoming, was traveling southbound on Wyoming Highway 789 from his home in Riverton to Lander, Wyoming. As Plaintiff passed the parking lot of the Northern Arapaho 789 Smokeshop/Casino, Defendant Gary C'Hair pulled out of the parking lot and struck the vehicle Mr. Strohecker was driving. Mr. C'Hair is an enrolled member of the Northern Arapaho Tribe, and was driving a vehicle belonging to his sister, Rochelle C'Hair, who is also an enrolled member of the Northern Arapaho Tribe. At the time of the accident, Ms. C'Hair was a resident of Natrona County. Mr. C'Hair's place of residence currently and at the time of the accident is unknown.

[¶4]    Plaintiff and his passenger, Sara Miller, were injured in the accident, and Ms. Miller called 911 to report the accident. Ms. Miller was informed that "the BIA, Highway Patrol, and Fremont County Sheriff's dispatchers would be notified of the

1

wreck to provide a rapid response to the scene." A BIA officer and the Wyoming Highway Patrol responded to the accident, along with an ambulance that transported Plaintiff and Ms. Miller to the hospital in Riverton. The BIA officer issued a citation to Gary C'Hair under the Shoshone and Arapaho Law and Order Code.

[¶5] On February 26, 2013, Plaintiff filed a complaint against Gary C'Hair in the Ninth Judicial District Court for Fremont County, Wyoming, seeking damages for injuries caused by Mr. C'Hair's negligent operation of a motor vehicle. On March 19, 2013, Plaintiff filed an amended complaint, adding Rochelle C'Hair as a defendant and alleging negligent entrustment of a vehicle as the cause of action against Ms. C'Hair. On April 19, 2013, Mr. C'Hair filed his answer to the amended complaint, and on May 23, 2013, Ms. C'Hair filed her answer. Both answers generally asserted lack of subject matter jurisdiction as an affirmative defense.

[¶6] On November 27, 2013, Plaintiff filed a complaint in the Shoshone and Arapaho Tribal Court. The complaint named Gary and Rochelle C'Hair, as well as Ms. C'Hair's insurer, Colorado Casualty Insurance Co., as defendants, and alleged causes of action for negligence and negligent entrustment of a vehicle. Shortly thereafter counsel for the parties exchanged correspondence concerning the filing in Tribal Court. Counsel for Defendants wrote, in part:

> I received your email and the attached Complaint filed in tribal court. I am disappointed that you have chosen to file another lawsuit in tribal court. I think that your original choice of filing in state court is where this case needs to be tried.
>
> Because you have now filed in tribal court where the law is different and is interpreted differently than in state court you have exposed my clients to the potential for inconsistent results. Furthermore they will be subjected to duplicative discovery. Consequently, we will be filing a motion in state court for a stay of proceedings until we can get the matter of which court is going to try the case sorted out.

[¶7] Plaintiff's counsel responded:

> * * * The Answers filed on behalf of Rochelle C'Hair and Gary C'Hair in the State Court Action both contain a Statement of Affirmative Defenses. The very first defense alleges the State District Court lacks subject matter jurisdiction in the case, the second claims the State District

2

Court lacks personal jurisdiction over the C'Hairs and the third claims that the venue is improper in the State District Court. * * *

We have now filed the action in Tribal Court because we are concerned that, if the case is tried in State District Court and a favorable result is obtained, your clients and the insurance company client will then argue the State District Court was without subject matter jurisdiction so any Judgment rendered amounts to a nullity.

[¶8]   On February 7, 2014, the district court, on the agreement of the parties, entered an order staying the state action.  On April 11, 2014, the Tribal Court entered an order dismissing Plaintiff's complaint with prejudice, explaining:

> The Court concludes Plaintiff's claims against Defendants Gary and Rochelle C'Hair are time barred by S&A LOC [Shoshone & Arapaho Law and Order Code] § 1-8-6 as any claim against Defendants was required to be brought by Plaintiff within two (2) years of the date of the accident, which would have been on or about July 27, 2011.

[¶9]   On April 24, 2014, Plaintiff filed a motion to lift the stay of the state action.  On that same date, Defendants filed a motion for summary judgment asserting they were entitled to judgment on the grounds that Plaintiff's claims were barred by the applicable statute of limitations and the doctrine of *res judicata* precluded relitigation of that issue.  Following Plaintiff's response to the summary judgment motion, Defendants submitted a reply memorandum, in which they asserted the district court's lack of subject matter jurisdiction as an additional ground for summary judgment.

[¶10] On July 23, 2014, the district court entered an order denying Defendants' summary judgment motion.  The court found that its exercise of jurisdiction would not infringe on tribal sovereignty, and that based on the location of the accident on a state highway, it had at a minimum concurrent jurisdiction over the action.  The court also rejected Defendants' statute of limitations argument, explaining:

> The Court also finds that the State is not required by law to borrow the statute of limitations of the Shoshone and Arapaho Law and Order Code.  W.S. 1-3-117 states, "If by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state."  The Wind River Indian Reservation does not qualify as another state or country outside the State of Wyoming, and as a result

3

the car accident did not occur in a state or country outside of Wyoming. Absent an express statement from the state legislature, this Court will not interpret the statute as extending to the laws of the Reservation.

[¶11] On August 7, 2014, Defendants filed a "Petition for Writ of Prohibition or in the alternative Petition for Writ of Review." On August 27, 2014, this Court granted the petition for writ of review.[1]

## STANDARD OF REVIEW

[¶12] This appeal is before this Court on the denial of Defendants' summary judgment motion. The denial of a summary judgment motion is ordinarily not a final appealable order, *Irene v. Seneca Ins. Co., Inc.*, 2014 WY 145, ¶ 23, 337 P.3d 483, 492 (Wyo. 2104), but because we granted Defendants' petition for writ of review, we review the district court's decision as follows:

---

[1] While Defendants' petition for writ of review was pending, Plaintiff sought reinstatement of his action in tribal court based on an amendment to the Northern Arapaho Code that revised the statute of limitations to provide for a four-year statute of limitations for all civil matters brought by or against the Northern Arapaho Tribe or its members. The amendment authorized reinstatement of cases dismissed as untimely and required any reinstatement request to be filed within one year of the amended Code's enactment. On April 3, 2015, the Tribal Court entered an order denying Plaintiff's request for reinstatement. The Tribal Court explained (citations omitted):

> As a matter of federal law Indian Tribes have the inherent authority to govern themselves apart from each other. Both NAT [Northern Arapaho Tribe] and EST [Eastern Shoshone Tribe] have enacted laws in the areas of governance, housing, enrollment, family support and gaming. The effect of these laws extends only to each tribe and its members. However the effect of enacting a separate statute of limitations amendment such as the one passed by NAT has a direct effect that goes beyond that Tribe and is members. It applies to all cases where the Tribe and its members are a party. If NAT or its members sue a non-member of the Tribe the statute of limitation is lengthened when applied. As a result this law is unlike those involved in governance, housing, family support and gaming which do not have a direct effect outside the Tribe and its members.

> The lengthening of the statute of limitations when the adverse party is a non-member of NAT alters their right not to be sued after two years. This right can be changed by NAT for itself and its members; however this amendment goes beyond that to alter or change the rights of non-members.

> Consequently in order to lengthen the existing two-year statute of limitations in SALOC (Shoshone & Arapaho Law & Order Code) Section 1-8-6, the JBC [Joint Business Council] or both tribes separately need[ed] to amend it because the rights contained within it, extends to all persons within the jurisdiction of the Shoshone and Arapaho Tribal Court.

> Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 5, 185 P.3d 1259, 1261 (Wyo.2008). When summary judgment involves a purely legal determination, we review *de novo* the trial court's summary judgment decision. *Glenn v. Union Pacific R.R. Co.*, 2008 WY 16, ¶ 6, 176 P.3d 640, 642 (Wyo.2008).

*Campbell County Mem'l Hosp. v. Pfeifle*, 2014 WY 3, ¶ 11, 317 P.3d 573, 576 (Wyo. 2014).

[¶13]  "The existence of subject matter jurisdiction is a question of law that we review *de novo*." *Harmon v. Star Valley Med. Ctr.*, 2014 WY 90, ¶ 14, 331 P.3d 1174, 1178 (Wyo. 2014) (quoting *Excel Constr., Inc. v. Town of Lovell*, 2011 WY 166, ¶ 12, 268 P.3d 238, 241 (Wyo. 2011)).  Whether an action is barred by the statute of limitations is likewise a question of law that we review *de novo*.  *Inman v. Boykin*, 2014 WY 94, ¶ 21, 330 P.3d 275, 281 (Wyo. 2014) (citing *Hoke v. Motel 6 Jackson*, 2006 WY 38, ¶ 6, 131 P.3d 369, 373 (Wyo. 2006)).

## DISCUSSION

[¶14]  We address first the question of the district court's subject matter jurisdiction and second the question whether Plaintiff's cause of action is barred by the applicable statute of limitations.

## A.    Subject Matter Jurisdiction

[¶15] This Court has held that when addressing questions of state versus tribal court jurisdiction, "we construe the subject-matter jurisdiction issue as a question of federal law, [and] we must, therefore, rely for guidance on United States Supreme Court opinions." *State ex rel. Peterson v. Dist. Court of Ninth Judicial Dist.*, 617 P.2d 1056, 1060 (Wyo. 1980); *see also Boller v. Key Bank of Wyoming*, 829 P.2d 260, 261-63 (Wyo. 1992) (applying federal law to uphold state court jurisdiction over non-Indian bank's foreclosure action against enrolled member of Shoshone Indian Tribe where mortgage was on fee land located on reservation).  Because the parties disagree on how the controlling United States Supreme Court precedent has progressed and how this Court has previously interpreted that precedent, we will begin our jurisdictional analysis with an outline of the controlling Supreme Court decisions and how that precedent has developed and been applied.  We will then apply the principles drawn from the controlling precedent to review the district court's exercise of jurisdiction in this case.

## 1.    United States Supreme Court Precedent

[¶16]  The Supreme Court long ago recognized that "Indian nations are 'distinct political communities, having territorial boundaries, within which their authority is exclusive[.]'" *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129 (1973) (quoting *Worcester v. Georgia*, 6 Pet. 515, 557, 8 L.Ed. 483 (1832)).  This doctrine of Indian sovereignty has evolved over time, however, to take into consideration state interests that may be implicated in an exercise of regulatory or adjudicative jurisdiction.  The Supreme Court explained:

> This is not to say that the Indian sovereignty doctrine, with its concomitant jurisdictional limit on the reach of state law, has remained static during the 141 years since *Worcester* was decided. Not surprisingly, the doctrine has undergone considerable evolution in response to changed circumstances. As noted above, the doctrine has not been rigidly applied in cases where Indians have left the reservation and become assimilated into the general community. *See, e.g., Oklahoma Tax Comm'n v. United States*, 319 U.S. 598, 63 S.Ct. 1284, 87 L.Ed. 1612 (1943). Similarly, notions of Indian sovereignty have been adjusted to take account of the State's legitimate interests in regulating the affairs of non-Indians. *See, e.g., New York ex rel. Ray v. Martin*, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946); *Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896); *Utah & Northern R. Co. v. Fisher*, 116 U.S. 28, 6 S.Ct. 246, 29 L.Ed.2d 542 (1885).

*McClanahan*, 411 U.S. at 171, 93 S.Ct. at 1261-62.

[¶17]  Two analyses designed to resolve conflicts between state and tribal jurisdiction have emerged from Supreme Court decisions: the infringement test drawn from *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), which looks to whether a state's exercise of jurisdiction over a matter will infringe on tribal self government, and the analysis announced in *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), which looks to whether tribal sovereignty requires tribal jurisdiction over a non-Indian or non-Indian activities.  *See Cordova v. Holwegner*, 971 P.2d 531, 537 (Wash. Ct. App. 1999) ("The [*Williams*] infringement test and the *Montana* analysis examine the limits of tribal inherent sovereignty from different perspectives, the former by examining the extent of state jurisdiction and the latter by examining the extent of tribal jurisdiction.").

**a.** *Williams v. Lee*

[¶18]  We begin with *Williams* and its progeny.  In *Williams*, the Supreme Court held that a state court lacked subject matter jurisdiction over a collection action brought by a non-Indian store owner against tribal members who lived on the reservation where the store was located.  *Williams*, 358 U.S at 217-18, 79 S.Ct. at 269.  In so holding, the Court announced what has become known as the *Williams* infringement test:  "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."  *Id.*, 358 U.S. at 220; 79 S.Ct. at 271.  In applying the test to the facts before it, the Court reasoned:

> There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves.  It is immaterial that respondent is not an Indian.  He was on the Reservation and the transaction with an Indian took place there.  *Cf. Donnelly v. United States, supra; Williams v. United States, supra*.  The cases in this Court have consistently guarded the authority of Indian governments over their reservations.  Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since.  If this power is to be taken away from them, it is for Congress to do it.  *Lone Wolf v. Hitchcock*, 187 U.S. 553, 564-566, 23 S.Ct. 216, 220-221, 47 L.Ed. 299.

*Williams*, 358 U.S. at 223, 79 S.Ct. at 272.

[¶19]  The *Williams* test applies primarily in matters where a non-Indian is involved or non-Indian interests are implicated.  *McClanahan*, 411 U.S. at 179, 93 S.Ct. at 1266.  In *McClanahan*, the Court explained:

> It must be remembered that cases applying the *Williams* test have dealt principally with situations involving non-Indians.  *See also Organized Village of Kake v. Egan*, 369 U.S., at 75-76, 82 S.Ct., at 570-571.  In these situations, both the tribe and the State could fairly claim an interest in asserting their respective jurisdictions.  The *Williams* test was designed to resolve this conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected.

7

*McClanahan*, 411 U.S. at 179, 93 S.Ct. at 1266; *but see Fisher v. Dist. Court of Sixteenth Judicial Dist. of Montana*, 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106 (1976) (acknowledging that *Williams* test generally applies where case involves a non-Indian, but nonetheless applying the analysis to reject state court jurisdiction over adoption proceeding where all parties were tribal members living on reservation).

[¶20] In subsequent cases, the Supreme Court clarified that the *Williams* analysis requires a two-part inquiry:

> Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art. 1, § 8, cl. 3. *See United States v. Wheeler*, *supra*, at 322-323, 98 S.Ct., at 1085–1086. This congressional authority and the "semi-independent position" of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be pre-empted by federal law. *See, e.g., Warren Trading Post Co. v. Arizona Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965); *McClanahan v. Arizona State Tax Comm'n, supra*. Second, it may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). *See also Washington v. Yakima Indian Nation*, 439 U.S. 463, 502, 99 S.Ct. 740, 762, 58 L.Ed.2d 740 (1979); *Fisher v. District Court*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (per curiam ); *Kennerly v. District Court of Montana*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity undertaken on the reservation or by tribal members.

*White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-43, 100 S.Ct. 2578, 2580, 65 L.Ed.2d 665 (1980) (footnote omitted); *see also Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 147, 104 S.Ct. 2267, 2274, 81 L.Ed.2d 113 (1984) (state may exercise jurisdiction so long as it is not preempted by incompatible federal law and does not infringe on the right of reservation Indians to make their own laws and be ruled by them).

[¶21] Although *White Mountain* applied the two-part *Williams* analysis to a state's exercise of regulatory authority, and thus couched the analysis as one applying to an assertion of regulatory jurisdiction, it is clear that the analysis applies equally to state

assertions of adjudicatory jurisdiction. *See, e.g., Three Affiliated Tribes*, 467 U.S. at 148-51, 104 S.Ct. at 2274-76 (state court jurisdiction over tribe's claims against non-Indian contractor would not run afoul of *Williams*); *Fisher*, 424 U.S. at 387-88, 96 S.Ct. at 947 (rejecting state court jurisdiction over adoption proceeding where all parties were tribal members living on reservation). In either case, whether a state is asserting regulatory or adjudicatory jurisdiction, the required analysis examines whether the exercise of state jurisdiction will interfere with federal objectives or tribal self government. *See White Mountain*, 448 U.S. at 145-48, 100 S.Ct. at 2585-86 (rejecting state license and use taxes on non-Indian logging corporations operating solely on reservation based on Interior Secretary's extensive authority to promulgate rules governing the harvest and sale of reservation timber and the related purpose of promoting self-sustaining tribal communities); *Fisher*, 424 U.S. at 387-90, 96 S.Ct. at 947-48 (finding state court jurisdiction over adoption proceeding where all parties were tribal members would infringe on tribal self government and was preempted by overriding federal policy contained in Indian Reorganization Act); *Three Affiliated Tribes*, 467 U.S. at 140, 104 S.Ct at 2270 (holding that state court jurisdiction over tribe's breach of contract action against its non-Indian contractor would not infringe on tribe's right to self government and was not preempted by requirements of federal law governing state jurisdiction).

[¶22] In summary, *Williams* and its progeny stand for the rule that a state may assert jurisdiction over an activity or a dispute involving a non-Indian and arising within the boundaries of a tribal reservation if: 1) the state's exercise of authority is not preempted by incompatible federal law; and 2) the state's exercise of authority does not infringe on the right of reservation Indians to make their own laws and be ruled by them. *Three Affiliated Tribes*, 467 U.S. at 147, 104 S.Ct. at 2274 (citing *Williams*, 358 U.S. at 220, 79 S.Ct. at 270; *White Mountain*, 448 U.S. at 142, 100 S.Ct. at 2583). As the Supreme Court has observed, "The upshot has been the repeated statements of this Court to the effect that, even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) (citations omitted).

[¶23] When considering the limitations on state court jurisdiction over matters potentially implicating both state and tribal interests, it is clear that the governing analysis has long been and continues to be the *Williams* test. Indeed, our Court and numerous other state jurisdictions have applied and continue to apply the *Williams* test to determine the extent of state court jurisdiction over actions involving tribal members. *See, e.g., Boller*, 829 P.2d at 261-63 (applying *Williams* analysis to uphold state court jurisdiction over non-Indian bank's foreclosure action against tribal member); *Peterson*, 617 P.2d at 1061 (applying *Williams* test to reject state court jurisdiction over action arising from vehicle accident occurring on reservation); *Outsource Serv. Mgmt., LLC v. Nooksack Bus. Corp.*, 333 P.3d 380, 382-83 (Wash. 2014) (applying *Williams* test to allow state court jurisdiction over non-Indian plaintiff's action to enforce contract against tribal entity

where contract was entered into on reservation and tribal entity consented to state court jurisdiction under terms of contract); *Gustafson v. Estate of Poitra*, 2011 ND 150, ¶ 10, 800 N.W.2d 842, 846-47 (ND 2011) (applying *Williams* test to reject state court jurisdiction over property dispute brought by non-Indian against tribal member concerning tribe-owned property located partially within reservation); *In re Estate of Big Spring*, 2011 MT 109, ¶ 50, 255 P.3d 121, 134-35 (Mont. 2011) (applying *Williams* test to reject Montana state court jurisdiction over probate action involving only tribal members and property located within reservation); *Risse v. Meeks*, 1998 SD 112, ¶ 11, 585 N.W.2d 875, 877 (S.D. 1998) (applying *Williams* test to allow state court jurisdiction over non-Indian plaintiff's action against tribal members for damage caused to land outside reservation by trespass of defendants' cattle but rejecting state court jurisdiction over punitive damages claim related to fencing within reservation boundaries); *Begay v. Roberts*, 807 P.2d 1111, 1114, 1116-17 (Az. Ct. App. 1990) (applying *Williams* test to allow state court jurisdiction over action by non-Indian plaintiff against tribal member for breach of vehicle purchase contract entered off reservation but rejecting state court jurisdiction to enter garnishment order against tribal member's wages earned on reservation); *Wells v. Wells*, 451 N.W.2d 402, 405-06 (S.D. 1990) (applying *Williams* test to uphold state court jurisdiction over wife's divorce action against husband where both parties were tribal members but wife resided outside reservation); *Powell v. Farris*, 620 P.2d 525, 527-28 (Wash. 1980) (applying *Williams* test to uphold state court jurisdiction over a non-Indian's action against tribal member seeking partnership dissolution and accounting for business located on tribal trust land and licensed by tribal council); *State Sec., Inc. v. Anderson*, 506 P.2d 786, 788-89 (N.M. 1973) (applying *Williams* test to uphold state court jurisdiction over a non-Indian's breach of contract action against tribal member where contract entered into outside reservation).

[¶24]  Although the *Williams* test is controlling in determining whether the district court properly assumed jurisdiction over the present case, we also must consider the principles announced by the Supreme Court in its 1981 decision in *Montana*, and the *Montana* line of cases.  These cases are relevant to our analysis because, although they address tribal sovereignty from the perspective of limitations on tribal jurisdiction over non-Indians, rather than limitations on state jurisdiction, their holdings closely parallel the *Williams* analysis and inform the application of that analysis.  *See, e.g., Cordova*, 971 P.2d at 537 (recognizing overlap of *Williams* and *Montana* analyses and describing them as "merely different formulations of the same underlying concept").  We turn then to the *Montana* line of cases.

b.  *Montana v. United States*

[¶25]  In *Montana*, the Court held that the Crow Indian Tribe's sovereign power did not include authority to regulate non-Indian fishing and hunting on lands located within the boundaries of the reservation but owned in fee by non-Indians.  *Montana*, 450 U.S. at 566, 101 S.Ct. at 1259.  In so ruling, the Court held that "the inherent sovereign powers

of an Indian tribe do not extend to the activities of nonmembers of the tribe." *Id.*, 450 U.S. at 565, 101 S.Ct. at 1258. The Court then announced two exceptions to that principle, outlining the circumstances under which a tribe may exercise jurisdiction over a non-Indian on the tribe's reservation:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. *Williams v. Lee, supra*, at 223, 79 S.Ct., at 272; *Morris v. Hitchcock*, 194 U.S. 384, 24 S.Ct. 712, 48 L.Ed. 1030; *Buster v. Wright*, 135 F. 947, 950 (CA8); *see Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152-154, 100 S.Ct. 2069, 2080-2082, 65 L.Ed.2d 10. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *See Fisher v. District Court*, 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106; *Williams v. Lee, supra*, at 220, 79 S.Ct., at 270; *Montana Catholic Missions v. Missoula County*, 200 U.S. 118, 128-129, 26 S.Ct. 197, 200-201, 50 L.Ed. 398; *Thomas v. Gay*, 169 U.S. 264, 273, 18 S.Ct. 340, 343, 42 L.Ed. 740.

*Montana*, 450 U.S. at 565-66, 101 S.Ct. at 1258 (footnote omitted).

[¶26] Following its decision in *Montana*, the Supreme Court continued to apply the principles announced in that case to determine tribal regulatory authority over non-Indian conduct on non-Indian land within a reservation. *See, e.g., Brendale v. Confederated Tribes and Bands of Yakima Nation*, 492 U.S. 408, 423-24, 109 S.Ct. 2994, 3004-05, 106 L.Ed.2d 343 (1989) (tribe lacked authority to zone fee lands owned by non-Indians on portion of reservation open to general public); *South Dakota v. Bourland*, 508 U.S. 679, 689, 113 S.Ct. 2309, 2316-17, 124 L.Ed.2d 606 (1993) (tribe lacked authority to regulate hunting and fishing by non-Indians on land and water located within reservation but acquired by the United States for operation of a dam and reservoir). In 1997, the Court extended the *Montana* test beyond tribal regulatory jurisdiction and applied it to determine tribal adjudicative jurisdiction. *Strate v. A-1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997).

[¶27] In *Strate*, the Supreme Court addressed tribal court jurisdiction over a personal injury action arising from an automobile accident that occurred on a state highway within reservation boundaries. *Strate*, 520 U.S. at 442-43, 117 S.Ct. at 1407-08. Both parties to the action were non-Indian. *Id*. In considering whether the tribal court had jurisdiction over the matter, the Court first confronted the question whether the *Montana* analysis even applied in the context of adjudicative jurisdiction, given that *Montana* announced a rule governing tribal regulatory jurisdiction. *Id*. at 447-53, 117 S.Ct. at 1410-13. In holding that the *Montana* analysis was controlling, the Court reasoned:

> While *Montana* immediately involved regulatory authority, the Court broadly addressed the concept of "inherent sovereignty." *Id*., at 563, 101 S.Ct., at 1257. Regarding activity on non-Indian fee land within a reservation, *Montana* delineated—in a main rule and exceptions—the bounds of the power tribes retain to exercise "forms of civil jurisdiction over non-Indians." *Id*., at 565, 101 S.Ct., at 1258. ***As to nonmembers, we hold, a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction***. Absent congressional direction enlarging tribal-court jurisdiction, we adhere to that understanding. Subject to controlling provisions in treaties and statutes, and the two exceptions identified in *Montana*, the civil authority of Indian tribes and their courts with respect to non-Indian fee lands generally "do[es] not extend to the activities of nonmembers of the tribe." *Ibid*.

*Strate*, 520 U.S. at 453, 117 S.Ct. at 1413 (emphasis added).

[¶28] The next question the Supreme Court addressed in *Strate* concerned the status of the land on which the accident occurred. *Strate*, 520 U.S. at 454, 117 S.Ct. at 1413. Specifically, the plaintiff argued that the *Montana* analysis applied only in cases involving non-Indian activity on non-Indian fee land, and the state highway at issue in *Strate* was not non-Indian fee land but was instead located on lands held in trust for the tribe. *Id*. The Court rejected the plaintiff's argument and held:

> Forming part of the State's highway, the right-of-way is open to the public, and traffic on it is subject to the State's control. The Tribes have consented to, and received payment for, the State's use of the 6.59–mile stretch for a public highway. They have retained no gatekeeping right. So long as the stretch is maintained as part of the State's highway, the Tribes cannot assert a landowner's right to occupy and exclude. *Cf. Bourland*, 508 U.S., at 689, 113 S.Ct., at 2316–2317

12

(regarding reservation land acquired by the United States for operation of a dam and a reservoir, Tribe's loss of "right of absolute and exclusive use and occupation ... implies the loss of regulatory jurisdiction over the use of the land by others"). We therefore align the right-of-way, for the purpose at hand, with land alienated to non-Indians. Our decision in *Montana*, accordingly, governs this case.

*Strate*, 520 U.S. at 455-56, 117 S.Ct. at 1414 (footnote omitted).[2]

[¶29] Having determined that the accident occurred on the equivalent of non-Indian land, the Supreme Court concluded that what it had before it was a case concerning the conduct of non-Indians on non-Indian land, making *Montana* applicable to the determination of tribal court jurisdiction. *Strate*, 520 U.S. at 456, 117 S.Ct. at 1414. In applying the *Montana* test, the Court framed it as follows:

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

*Strate*, 520 U.S. at 446, 117 S.Ct. at 1409-10.

---

[2] In so holding, the Court acknowledged that it was deviating from at least one statutory definition of "Indian country" that included "rights-of-way running through [a] reservation." *Strate*, 520 U.S. at 454, 117 S.Ct. at 1413, n.9 (citing 18 U.S.C. § 1151). Additionally, while the Court concluded that the tribes had a diminished regulatory role on the state highway for purposes of civil jurisdiction, it acknowledged the tribes do retain criminal enforcement authority on the highway. The Court noted:

> We do not here question the authority of tribal police to patrol roads within a reservation, including rights-of-way made part of a state highway, and to detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law. Cf. *State v. Schmuck*, 121 Wash.2d 373, 390, 850 P.2d 1332, 1341 (en banc) (recognizing that a limited tribal power "to stop and detain alleged offenders in no way confers an unlimited authority to regulate the right of the public to travel on the Reservation's roads"), *cert. denied*, 510 U.S. 931, 114 S.Ct. 343, 126 L.Ed.2d 308 (1993).

*Strate*, 520 U.S. at 456, 117 S.Ct. at 1414, n.11.

[¶30]   The Court held the first *Montana* exception was not applicable, explaining:

> The first exception to the *Montana* rule covers "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." 450 U.S., at 565, 101 S.Ct., at 1258. The tortious conduct alleged in [Plaintiff's] complaint does not fit that description. The dispute, as the Court of Appeals said, is "distinctly non-tribal in nature." 76 F.3d, at 940. It "arose between two non-Indians involved in [a] run-of-the-mill [highway] accident." *Ibid.* Although [Defendant] was engaged in subcontract work on the Fort Berthold Reservation, and therefore had a "consensual relationship" with the Tribes, "[Plaintiff] was not a party to the subcontract, and the [T]ribes were strangers to the accident." *Ibid*.

*Strate*, 520 U.S. at 456-57, 117 S.Ct. at 1415.

[¶31]   The Court found the second *Montana* exception equally unavailing.   The Court reasoned:

> The second exception to *Montana's* general rule concerns conduct that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S., at 566, 101 S.Ct., at 1258. Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members. But if *Montana's* second exception requires no more, the exception would severely shrink the rule. * * *
>
> * * * *
>
> Read in isolation, the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: "Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members.... But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations." 450 U.S., at 564, 101 S.Ct., at 1257–1258. ***Neither regulatory nor adjudicatory authority over the state highway accident***

14

> *at issue is needed to preserve "the right of reservation Indians to make their own laws and be ruled by them."* *Williams*, 358 U.S., at 220, 79 S.Ct., at 271. The *Montana* rule, therefore, and not its exceptions, applies to this case.
>
> [Plaintiff] may pursue her case against [Defendants] in the state forum open to all who sustain injuries on North Dakota's highway. Opening the Tribal Court for her optional use is not necessary to protect tribal self-government; and requiring [Defendants] to defend against this commonplace state highway accident claim in an unfamiliar court is not crucial to "the political integrity, the economic security, or the health or welfare of the [Three Affiliated Tribes]." *Montana*, 450 U.S., at 566, 101 S.Ct., at 1258.

*Strate*, 520 U.S. at 457-59, 117 S.Ct. at 1415-16 (footnotes omitted) (emphasis added).

[¶32] In two cases subsequent to *Strate*, the Supreme Court again applied its *Montana* analysis to determine tribal court jurisdiction. *See Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008) (rejecting tribal jurisdiction over tribal member's claim against non-Indian bank alleging discrimination in bank's sale of non-Indian fee land located on reservation); *Nevada v. Hicks*, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001) (rejecting tribal court jurisdiction over tribal member's claims against state officials alleging violations of tribal law in execution of search warrant on reservation). Both cases focused on the required link between a tribe's regulatory and adjudicative authority, with the Court in *Plains Commerce* observing:

> Our cases have made clear that once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. * * * Moreover, when the tribe or tribal members convey a parcel of fee land "*to non-Indians*, [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands." *South Dakota v. Bourland*, 508 U.S. 679, 689, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) (emphasis added). This necessarily entails "the loss of regulatory jurisdiction over the use of the land by others." *Ibid*.

*Plains Commerce*, 554 U.S. at 328-29, 128 S.Ct. at 2719; see also *Hicks*, 533 U.S. at 374, 121 S.Ct. at 2318.

[¶33] Applying the controlling precedent established by the *Williams* line of cases governing state court jurisdiction and the *Montana* line of cases addressing tribal court

15

jurisdiction, we turn to our review of the district court's exercise of subject matter jurisdiction in the present case.

## 2.    Application of the Controlling Precedent

[¶34]   The district court ruled that it had jurisdiction over this action because its exercise of jurisdiction would not infringe on tribal sovereignty and because the accident occurred on a state highway.  The court explained:

> The Court concludes that the State has, at a minimum, concurrent jurisdiction in this matter.  The current case is distinct from *Peterson* [*v. Dist. Court of Ninth Judicial Dist.*, 617 P.2d 1056 (Wyo. 1980)].  The *Peterson* Court stated, "'absent governing Acts of Congress, the question has always been whether the state action infringed on the right(s) of reservation Indians to make their own laws and be ruled by them.'"  *Peterson*, 617 P.2d at 1061 (citing *Williams v. Lee*, 358 U.S. 217, 220 (1959)).  The conflict in *Peterson* was ultimately between two tribal members, while the current lawsuit involves one member and one non-member.  As a result, the tribal interest in the present case is not as substantial, and the exercise of state jurisdiction does not infringe on tribal self-governance as it would in a case involving two tribal members.
>
> Furthermore, the ruling in *Strate* [*v. A-1 Contractors*, 520 U.S. 438 (1997)] indicates that the State has jurisdiction based on the location of the car accident.  The Court found that a state highway on Reservation land was not considered to be tribal land for the purposes of jurisdiction.  *See Strate*, 520 U.S. at 454.  In *Montana v. United States*, 450 U.S. 544 (1981), the Court recognized that a tribe may exercise sovereign power over non-members on non-Indian land located within the boundaries of a reservation only in limited circumstances.  This includes when the non-member "enter[s] consensual relationships with the tribe or its members," or when the non-member's conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  *Montana*, 450 U.S. at 566.  The current suit does not invoke either of *Montana's* exceptions.

16

[¶35] Defendants challenge the district court's ruling on three grounds. They argue: 1) this Court's decision in *Peterson* is controlling and dictates that the state court lacks jurisdiction; 2) any exercise of state court jurisdiction must be pursuant to Public Law 280; and 3) *Strate* does not apply because the Supreme Court's holding in that case is limited to cases where both parties to the dispute are non-Indians. We will address each argument in turn.

**a.      *Peterson***

[¶36] In *Peterson*, this Court held that a Wyoming district court lacked subject matter jurisdiction over a claim arising out of a collision between a pickup truck and a horse on a U.S. highway within the boundaries of the Wind River Indian Reservation. *Peterson*, 617 P.2d at 1057. The owners of the horse and truck were both enrolled members of the Shoshone Tribe, but it was the truck owner's non-Indian subrogee, Milbank Mutual Insurance Company, that filed the action in state district court against the horse owner, Alice Peterson. *Id*. In rejecting state court jurisdiction, we applied a *Williams* analysis and concluded that such an exercise of jurisdiction would interfere with tribal self government. *Id.* at 1068.

[¶37] Defendants argue *Peterson* is controlling because its pertinent facts are identical to those in the present case. In particular, Defendants cite as the controlling facts in *Peterson* that the action arose from an accident within the reservation boundaries and that it involved a non-Indian plaintiff and a defendant tribal member. We disagree that this is how this Court viewed the controlling facts before it, and we find Defendants' argument unsupported by the *Peterson* reasoning.

[¶38] The Court in *Peterson* acknowledged that the real party in interest from a financial perspective was a non-Indian insurance company. *Peterson*, 617 P.2d at 1058. The Court also emphasized, however, its recognition that in terms of the conduct at issue, the adjudication required evaluation of the conduct of two tribal members. *Id.* at 1058-59 (footnote omitted) ("[I]t would appear that the instant case is formally between a non-Indian and an Indian. Nonetheless, we consider it significant that trial of this case * * * would, of necessity, involve evaluation of the conduct (for purposes of ascertaining negligence) of two Reservation Indians on the Reservation."). Ultimately, the Court relied on *Fisher*, a decision of the Supreme Court that applied *Williams* but involved parties who were all tribal members, as the controlling precedent. *Id*. at 1068; *see also Fisher*, 424 U.S. at 387-88, 96 S.Ct. at 947 (rejecting state court jurisdiction over adoption proceeding where all parties were tribal members living on reservation). We explained:

> We view *Fisher* as indicating that where a tribal court
> is established to handle a dispute involving reservation
> Indians, concurrent state jurisdiction is an interference with

17

tribal self-government. *Fisher* is applicable to the case at bar because, as discussed in the section of this opinion titled, "A PRELIMINARY ISSUE MILBANK'S RIGHTS AS A SUBROGEE," trial of the case in a Wyoming court would necessarily involve evaluation of the conduct of two Indians arising out of activities taking place on the reservation.

*Peterson*, 617 P.2d at 1068.

[¶39] We find it clear that the Court in *Peterson* treated the action before it as one involving two tribal members and their on-reservation conduct. That this was how the Court viewed the case was confirmed by our holding in *Boller*, a case in which we upheld a district court's jurisdiction over an action brought by a non-Indian bank against a tribal member to foreclose on mortgaged fee land located on the reservation. *Boller*, 829 P.2d at 260. In upholding the district court's jurisdiction, we rejected the argument that *Peterson* was controlling and distinguished it on grounds that: "(1) both parties in the *Peterson* case were enrolled Indians, * * * and (2) the entire incident in *Peterson* took place within the interior boundaries of the Reservation." *Id*. at 264.

[¶40] The case now before this Court involves a non-Indian plaintiff's action against two tribal members. Additionally, the record shows, and Defendants do not dispute, that the state highway on which the accident in the present case occurred is the same type of right-of-way (federally granted pursuant to 25 U.S.C. §§ 323-328) that the Supreme Court held in *Strate* to be the equivalent of non-Indian fee land. *See Strate*, 520 U.S. at 454-55, 117 S.Ct. at 1413-14. Thus, instead of a jurisdictional question involving an accident between two tribal members on reservation land, as in *Peterson*, the present case requires that we consider whether a state court may exercise jurisdiction over a non-Indian's action against two tribal members for injuries sustained in an accident that occurred within the reservation but on non-Indian fee land. *Peterson* is not controlling.[3]

---

[3] Defendants also cite the Court's statement in *Peterson* that "in the case at bar, a federal regulation, *supra*, provides for tribal court jurisdiction when the defendant in a civil action is an Indian," as authority for the tribal court's exclusive jurisdiction in this case. *See Peterson*, 617 P.2d at 1068-69. This argument fails because the referenced federal regulation defines the jurisdiction of a Court of Indian Offenses. *See* 25 C.F.R. § 11.100. A Court of Indian Offenses operates only in those areas where a tribal court has not been established. *See* 25 C.F.R. § 11.102 ("It is the purpose of the regulations in this part to provide adequate machinery for the administration of justice for Indian tribes in those areas of Indian country where tribes retain jurisdiction over Indians that is exclusive of State jurisdiction but where tribal courts have not been established to exercise that jurisdiction."). The Wind River Reservation no longer operates a Court of Indian Offenses and instead operates its own court, the Shoshone and Arapaho Tribal Court. *See Shoshone & Arapaho Law & Order Code* § 1-3-1 (Nov. 1, 2004) ("There is hereby established a Shoshone and Arapaho Tribal Court to handle all matters of a judicial nature within the jurisdiction of the Shoshone and Arapaho Tribes as provided in this Code.").

**b.   Public Law 280**

[¶41]   Defendants next argue that because Wyoming has not formally elected to exercise jurisdiction over actions arising in Indian country pursuant to Public Law 280, the district court erred in asserting jurisdiction.   We disagree that Public Law 280 has any application in this matter.

[¶42]   Public Law 280 was enacted in 1953 and is a statute that delegated to first five, and then six states "jurisdiction over most crimes and many civil matters throughout most of the Indian country within their borders."   Felix Cohen, *Cohen's Handbook of Federal Indian Law* § 6.04[3][a] at 537 (Neil Jessup Newton ed. 2012) (footnotes omitted).   The Act offered any other state the option to accept the same jurisdiction, which, with regard to civil actions, would have entailed a grant of jurisdiction over civil actions involving Indians and would have given certain state laws the same force and effect in Indian country.   *Id.* at 537, 539.

[¶43]   Public Law 280 is a much broader span of jurisdiction than that allowed under *Williams*.   *See Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463, 470-74, 99 S.Ct. 740, 746-47, 58 L.Ed.2d 740 (1979) (comparing state jurisdiction permitted under *Williams* analysis with that provided pursuant to Public Law 280).   The Supreme Court has described the purpose of Public Law 280 as follows:

> Congress, we are told, passed Pub.L. 280 not as a measure to benefit the States, but to reduce the economic burdens associated with federal jurisdiction on reservations, to respond to a perceived hiatus in law enforcement protections available to tribal Indians, and to achieve an orderly assimilation of Indians into the general population.   That these were the major concerns underlying the passage of Pub.L. 280 cannot be doubted.   *See Bryan v. Itasca County*, 426 U.S., at 379, 96 S.Ct., at 2106.

*Washington*, 439 U.S. at 498, 99 S.Ct. at 760.

[¶44]   Public Law 280 was intended as an offer of broader jurisdiction to those states that chose to accept that burden.   *See Williams*, 358 U.S. at 220, 79 S.Ct. at 271 (Public Law 280 "contemplates criminal and civil jurisdiction over Indians by any State ready to assume the burdens that go with it.").   It was not, however, intended to define the sole circumstances under which a state may exercise jurisdiction over matters arising on an Indian reservation.   *Three Affiliated Tribes*, 467 U.S. at 150, 104 S.Ct at 2275.   In *Three Affiliated Tribes*, the Supreme Court observed:

19

> This Court previously has recognized that Pub.L. 280 was intended to facilitate rather than to impede the transfer of jurisdictional authority to the States. *Washington v. Yakima Indian Nation*, 439 U.S., at 490, 99 S.Ct., at 756; *see also Bryan v. Itasca County*, 426 U.S., at 383–390, 96 S.Ct., at 2108-2111. Nothing in the language or legislative history of Pub.L. 280 indicates that it was meant to divest States of pre-existing and otherwise lawfully assumed jurisdiction.

*Three Affiliated Tribes*, 467 U.S. at 150, 104 S.Ct at 2275 (footnote omitted).

[¶45] The analysis of the Washington Supreme Court is also instructive in illustrating that Public Law 280 did not displace the *Williams* analysis as a basis on which a state may exercise jurisdiction over a matter arising on an Indian reservation. In a dispute between a tribe and a non-Indian entity filed in state court, the Washington court addressed jurisdiction according to the following parameters:

> Washington State courts generally have jurisdiction over civil disputes in Indian country if either (1) the state has assumed jurisdiction pursuant to Public Law 280 or (2) asserting jurisdiction would not infringe on the rights of the tribe to make its own laws and be ruled by them. *Id*. at 784–87, 620 P.2d 525.
>
> Importantly, both sides agree that this dispute does not fall within the scope of the civil jurisdiction that Washington assumed pursuant to Public Law 280. Thus, the question is whether asserting jurisdiction in this case would infringe on the rights of the tribe.

*Outsource Serv. Mgmt*, ¶¶ 8-9, 333 P.3d at 382 (footnote omitted); *see also Powell v. Farris*, 620 P.2d 525, 526 (Wash. 1980) ("It is well settled that even without the jurisdiction conferred by Congress in Public Law 280, the state may exercise some jurisdiction over some reservation conduct.").

[¶46] Public Law 280 simply has no application in this case. Wyoming has not accepted jurisdiction pursuant to Public Law 280, and the law therefore does not dictate the parameters of Wyoming's jurisdiction. Instead, the limits on Wyoming's jurisdiction remain those established by *Williams*.

**c.    Application of *Williams and Strate***

[¶47]   At the outset of this part of our discussion, we emphasize that the question we are answering is whether the state court may exercise subject matter jurisdiction over this matter.   In answering that question, we are not called upon to address the tribal court's jurisdiction, and we do not do so.   Our analysis will therefore focus on application of *Williams*, which instructs that a state court may exercise jurisdiction over a dispute between a tribal member and non-Indian, including one arising on the reservation, if that exercise of jurisdiction does not violate federal law or infringe on the right of reservation Indians to make their own laws and be ruled by them.   *Williams*, 358 U.S. at 220, 79 S.Ct. at 270.

[¶48]   That said, we also recognize, as we observed earlier in this opinion, that the tests for tribal and state court jurisdiction have overlapping considerations.   *See Strate*, 520 U.S. at 459, 117 S.Ct. at 1416 (citing to *Williams* in holding that *Montana's* second exception applies only where tribal court jurisdiction is necessary "to protect tribal self-government or to control internal relations"); *see also Cordova*, 971 P.2d at 537 (describing *Williams* and *Montana* analyses as "merely different formulations of the same underlying concept").   In reviewing tribal court jurisdiction, the Supreme Court has announced principles concerning the status of land, a tribe's regulatory interests, and the types of civil disputes that may impact tribal self government.   Such considerations are equally relevant in determining whether a state court's exercise of jurisdiction will infringe on tribal self government—one of the questions that must be answered in a *Williams* analysis.   Indeed, our Court has, in a prior *Williams* analysis of state court jurisdiction, relied on principles announced in the *Montana* line of cases.   *See Boller*, 829 P.2d at 262-63 (looking to Supreme Court's reasoning in *Brendale v. Confederate Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989)).   Thus, in deciding the present jurisdictional question, we adhere to the *Williams* analysis but also draw on principles from the *Montana* line of cases, and in particular, the Supreme Court's decision in *Strate*.

[¶49]   In this case, there is no suggestion that the district court's exercise of jurisdiction is preempted by federal law or would otherwise violate federal law.   The question we must answer under *Williams* then is whether the exercise of state jurisdiction will infringe on the tribe's right to make its own laws and be ruled by them.   Based on the principles announced in *Strate*, we conclude state jurisdiction will not infringe on those rights.

[¶50]   As we noted above, the record indicates that State Highway 789, the highway on which the accident occurred, is a state highway on a federally-granted right-of-way. Additionally, nothing in the right-of-way documents, the application, grant or tribal resolution granting the right-of-way, asserts a tribal right to continuing regulatory jurisdiction over the right-of-way.   Based then on the holding in *Strate*, while Highway 789 is within the boundaries of the Wind River Indian Reservation, it is the equivalent of

non-Indian fee land, and the tribe has a limited role in regulating the highway. *Strate,* 520 U.S. at 455-56, 117 S.Ct. at 1414.

[¶51] Under such circumstances, the Supreme Court has held that "[n]either regulatory nor adjudicatory authority over the state highway accident at issue is needed to preserve 'the right of reservation Indians to make their own laws and be ruled by them.'" *Strate,* 520 U.S. at 459, 117 S.Ct. at 1416 (quoting *Williams*, 358 U.S. at 220, 79 S.Ct. at 271). It follows, given the limited tribal regulatory interest, that a state's exercise of civil adjudicatory jurisdiction over such an accident will not infringe on the tribe's right to self government. Defendants contest this extension of *Strate*, however, arguing the present case is distinguishable because Defendants are tribal members whereas all parties to the action in *Strate* were non-Indian. We disagree that this distinguishes the Supreme Court's reasoning and holding in *Strate*.

[¶52] Defendants' argument fails because it does not adequately account for the Supreme Court's emphasis on the tribe's diminished regulatory interest on a state highway. That the parties in *Strate* were non-Indians was certainly a significant fact in that it was the fact that raised the question of the tribal court's jurisdiction. The Supreme Court itself has, however, rejected the view that its *Strate* ruling applies only where all of the parties to the action are non-Indians. In *Hicks*, the Court, as in *Strate*, ruled against tribal court jurisdiction based on the tribe's lack of regulatory authority, but this time the plaintiff in the action was a tribal member. *Hicks*, 533 U.S. at 374, 121 S.Ct. at 2318. In so ruling, the Court relied on *Strate*, and the majority opinion, authored by Justice Scalia, responded to Justice Stevens' concurring opinion with the following observation:

> Justice STEVENS thinks *Strate* * * * "merely concerned the circumstances under which tribal courts can exert jurisdiction over claims against nonmembers," *post,* at 2333, n. 3. But *Strate's* limitation on jurisdiction over nonmembers pertains to subject-matter, rather than merely personal, jurisdiction, since it turns upon whether the actions at issue in the litigation are regulable by the tribe.

*Hicks*, 533 U.S. at 367, 121 S.Ct. at 2314, n. 8.

[¶53] The Supreme Court has thus emphasized that its holding in *Strate* stemmed from the tribe's diminished regulatory role on a state highway and was not a product of the fact that both parties to the action were non-Indian. Other courts have similarly concluded that the fact of a tribal member being a party to the action does not change the outcome dictated by *Strate*. *See Nord v. Kelly*, 520 F.3d 848, 856-57 (8th Cir. 2008) (rejecting tribal court jurisdiction over action brought by tribal member against non-Indian for injuries sustained in vehicle accident on state highway on reservation); *Burlington Northern R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1062 (9th Cir. 1999) (rejecting tribal court

jurisdiction over tribal members' action against non-Indian railroad for injuries sustained in train-vehicle collision on railroad's right-of-way on reservation); *Wilson v. Marchington*, 127 F.3d 805, 814-15 (9th Cir. 1997) (rejecting tribal court jurisdiction over tribal member's action against non-Indian arising from vehicle collision on U.S. highway on reservation and rejecting plaintiff's status as tribal member as a distinguishing factor); *Austin's Express, Inc. v. Arneson*, 996 F.Supp. 1269, 1272 (D. Mont. 1998) (rejecting tribal court jurisdiction over tribal member's action against non-Indians for injuries sustained in vehicle accident on federal highway on reservation).

[¶54] We are cognizant that the cases cited in the preceding paragraph differ from our present case in that the case before us concerns an action against defendant tribal members whereas in each of the cases cited above, the plaintiffs were tribal members and the defendants were non-Indians. For the reasons that follow, however, we find that the alignment of the parties is not material to our analysis and does not change the outcome dictated by the application of *Williams* and *Strate*.

[¶55] We begin with the Eighth Circuit's analysis in *Nord*, the reasoning of which we find particularly instructive. In *Nord*, a member of the Red Lake Band of Chippewa Indians filed an action in tribal court against two non-Indians for injuries sustained in a vehicle accident that occurred on a state highway on the Red Lake Reservation. *Nord*, 520 F.3d at 851. In ruling against tribal court jurisdiction, the court rejected an argument that *Strate* should not apply because the plaintiff was a tribal member. *Id*. at 856. It reasoned:

> The only distinguishing fact is that *Strate* involved a non-Indian plaintiff whereas the injured plaintiff in this case is a member of the Red Lake Band, but this distinction is insignificant. The Court in *Strate* expressly cautioned against reading the second *Montana* exception in isolation to apply to the personal health and welfare of a few individual members. *See id*. at 457–58, 117 S.Ct. 1404 ("Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members. But if *Montana's* second exception requires no more, the exception would severely shrink the rule."). "[A] tribe's inherent power does not reach beyond what is necessary to protect tribal self-government or to control internal relations." *Id*. at 459, 117 S.Ct. 1404 (internal marks omitted).
>
> We do not disagree with the Tribal Court's assertion that the Red Lake Band is unique in many respects and has long opposed intrusions on its land. *See, e.g.*, 28 U.S.C. § 1360

23

(specifically exempting the Red Lake Band from legislation extending the state's civil jurisdiction over claims involving Indians); *County of Beltrami v. County of Hennepin*, 264 Minn. 406, 119 N.W.2d 25, 30 (1963) (noting that the Red Lake Band was excluded from the legislation at its own insistence). However, we cannot agree with the assertion that, contrary to the language of *Strate*, the Band's ability to regulate and to exercise adjudicatory authority over nonmembers on the highway is important to its tribal sovereignty. The Band exercised its sovereignty by consenting to a right-of-way that permitted the State to construct and maintain a public highway on its reservation, without specifically reserving any regulatory or adjudicatory authority over nonmembers using the highway. Again, as long as the highway remains part of the State's highway system, the Red Lake Band has lost its "right of absolute and exclusive use and occupation, [which] implies the loss of regulatory jurisdiction over the use of the land by others." *Strate*, 520 U.S. at 456, 117 S.Ct. 1404 (internal marks omitted).

*Nord*, 520 F.3d at 856-57.

[¶56]  In *Nord*, the fact that a tribal court was being asked to provide a forum for redress of a tribal member's injuries did not change the application of *Strate*.  This decision emphasizes that when a court is considering the question of subject matter jurisdiction, the focus must remain on the impact to the tribe's right to self government, not on the impact to a single member. *See also Wilson*, 127 F.3d at 815 (rejecting plaintiff's status as tribal member as a basis to distinguish *Strate*: "If the possibility of injuring multiple tribal members does not satisfy the second *Montana* exception under *Strate,* then, perforce, Wilson's status as a tribal member alone cannot.").  The Washington Supreme Court has explained this emphasis on tribal rather than member interest in considering state court jurisdiction:

> The purpose of limiting state court jurisdiction for matters arising on Indian reservations is to protect the rights of Indians to "'make their own laws and be ruled by them.'" *Id*. at 786–87, 620 P.2d 525 (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)). Thus, when asked whether state courts have jurisdiction in a case that occurs on a reservation, we carefully consider the interests and authority of the tribe. *Id.* at 787, 620 P.2d 525. Normally, the tribe's interest in self-governance is a separate

24

interest than those of the parties. For example, if two parties on a reservation had a dispute in an area of the law regulated by the tribe but chose to file in state court, the state court would have to consider the separate question of the tribe's interest in governing the matter. *Id*. Even if the parties had agreed to state court jurisdiction, the state court may find that jurisdiction is nonetheless inappropriate because it would infringe on the tribe's right to govern the matter.

*Outsource Mgmt. Serv.*, ¶ 10, 333 P.3d at 382-83.

[¶57] Given this required focus, we are unable to discern a reason to treat the jurisdictional question differently in the case before us based solely on the basis that Plaintiff is a non-Indian and Defendants are tribal members. Regardless of the alignment of the parties, the adjudication is directed at a dispute between a non-Indian and two tribal members over an accident occurring on a state highway over which the Northern Arapaho Tribe has limited regulatory authority. This is not an exercise of jurisdiction over internal tribal or reservation affairs, and Defendants have not identified how the district court's exercise of jurisdiction over this action will infringe on the Northern Arapaho Tribe's right to make its own laws and be ruled by them on the reservation. *See Plains Commerce*, 554 U.S. at 330, 128 S.Ct. at 2720 (assigning burden of proving tribal interest to party asserting that interest). The Tribe retains authority, as the Supreme Court observed in *Strate*, to patrol the highway and detain non-Indian motorists that violate state laws governing the highway. It also retains the authority to enforce member violations of the Tribe's own rules, as occurred in this case. *See* ¶ 4 (noting that the responding BIA officer cited Gary C'Hair for a violation of the Shoshone and Arapaho Law and Order Code). The district court's adjudication of this civil action will in no way infringe on the Tribe's exercise of these powers or on its right to make its own laws and be ruled by them on the reservation. We therefore conclude, pursuant to *Williams*, that the district court properly asserted subject matter jurisdiction over Plaintiff's action.

[¶58] Our holding finds support in a federal district court decision rejecting tribal court jurisdiction over a similar case in which it was a tribal member against whom the action was brought. *See Tejesova v. Bone*, 2007 WL 1160059, * 3 (W.Dist. N.C. 2007). In *Tejesova*, a non-Indian living on the reservation brought an action against a tribal member living on the reservation for injuries sustained in a vehicle collision on a federal highway on the reservation. *Id*. The court rejected tribal court jurisdiction. *Id*. In so holding, the court found *Strate* controlling because the "Plaintiff 'suffered [her] injuries on U.S. Highway [441], which, as a federal highway within the reservation, is neither tribal land nor controlled by members of the Tribes.'" *Id*. (quoting *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1135 (9th Cir. 2006)).

25

[¶59] We also recognize, however, that our holding in this matter differs from the conclusion that other courts have reached in addressing this same question. *See Winer v. Penny Enter., Inc.*, 674 N.W.2d 9, 2004 ND 21 (N.D. 2004); *Hinkle v. Abeita*, 2012-NMCA-074, 283 P.3d 877 (N.M. Ct. App. 2012). While both of these cases are factually on point, we find neither decision persuasive.

[¶60] In *Winer*, the North Dakota Supreme Court ruled against state court jurisdiction over an action brought by a non-Indian against tribal members for damages resulting from a vehicle accident occurring on a state highway within the boundaries of the Spirit Lake Indian Reservation. *Winer*, ¶ 1, 674 N.W.2d at 10. In so holding, the court rejected application of the principles announced in *Strate* because: 1) *Strate* analyzed a tribal court's jurisdiction rather than a state court's jurisdiction; and 2) *Strate* involved only non-Indian parties and no other court had applied it to an action where the defending party was a tribal member. *Id.*, ¶¶ 16-17, 674 N.W.2d at 15-16. Having rejected application of *Strate*, the court found its own state precedent to be controlling and based on that precedent, it concluded state court jurisdiction would infringe on the tribe's right to govern itself. *Id.*, ¶ 22, 674 N.W.2d at 17.

[¶61] The *Winer* analysis is plainly at odds with our own analysis. First, we believe the concern with applying *Strate* to a state court analysis is simply misplaced. As we noted above, the *Montana* and *Williams* analyses overlap considerably, and we thus see no reason to refrain from applying the *Strate* principles in examining state court jurisdiction. With regard to whether the *Strate* holding can apply where a tribal member is the defending party, we obviously interpret *Strate* differently. On this point, however, we note that *Winer* was a split decision, with one justice specially concurring and two justices dissenting. The dissenting justices found the alignment of the parties did not change the applicability of *Strate* and would have upheld state court jurisdiction based on the tribe's lack of regulatory authority over the state highway. *Id.*, ¶¶ 28, 32-34, 674 N.W. 2d at 18-19. The specially concurring justice preferred a purely state-law analysis, and based on state law, he agreed with the result reached by the majority opinion. *Id.*, ¶¶ 25-26; 674 N.W.2d at 17. Notably, though, he opined that the dissent's interpretation of *Strate* appeared to be a logical interpretation of the law. Thus, based on the split decision, a majority of the North Dakota court in fact appears to have agreed with our interpretation of *Strate*.

[¶62] Finally, we also part ways with the *Winer* analysis because the analysis is one based primarily on state precedent. We have held that federal law governs our analysis of state versus tribal court jurisdiction, *Peterson*, 617 P.2d at 1060, and we do not share North Dakota's controlling state precedent.

[¶63] For these reasons cited above, we are not persuaded by the North Dakota court's decision in *Winer*. In *Hinkle*, the New Mexico Court of Appeals addressed a similar fact scenario with the same alignment of parties and reached the same result as *Winer*.

26

Because the *Hinkle* decision approached the question similarly to the North Dakota court in *Winer,* albeit without the split decision, we find that decision likewise unpersuasive. *See Hinkle,* 283 P.3d 877. Moreover, in addition to relying on state law to reach its decision, the *Hinkle* court cited state precedent for affording broader tribal sovereignty under New Mexico law than that dictated by federal law. *Id.,* ¶ 22 at 885. Again, that is not precedent we have in our state precedent and our approach has been to defer to federal law on these jurisdictional questions.

[¶64] Having concluded the district court properly asserted subject matter jurisdiction over this action, we turn to Defendants' argument that Plaintiff's action is barred by the applicable statute of limitations.

## B. Statute of Limitations

[¶65] Defendants contend that even if the district court has subject matter jurisdiction, Plaintiff's claim is barred by the two-year statute of limitations set by Section 1-8-6 of the Shoshone & Arapaho Law and Order Code (LOC). In support of this argument, Defendants cite to Wyoming's borrowing statute, the doctrine of lex loci delicti, and full faith and credit requirements. We conclude none of these provides a basis to apply the LOC two-year statute of limitations and uphold the district court's rejection of Defendants' statute of limitations argument.

## 1. Borrowing Statute

[¶66] Wyoming's borrowing statute provides that "[i]f by the laws of the state or country where the cause of action arose the action is barred, it is also barred in this state." Wyo. Stat. Ann. § 1-3-117 (LexisNexis 2015). The district court concluded that because the Wind River Indian Reservation is neither a state nor a country, the borrowing statute did not provide a basis to apply the LOC two-year statute of limitations. We agree.

[¶67] The United States Supreme Court has described the status of tribes, observing that they are neither a state nor a nation:

> But it is nonetheless still true, as it was in the last century, that '(t)he relation of the Indian tribes living within the borders of the United States . . . (is) an anomalous one and of a complex character. . . . They were, and always have been, regarded as having a semi-independent position when they preserved their tribal relations; not as States, not as nations, not as possessed of the full attributes of sovereignty, but as a separate people, with the power of regulating their internal and social relations, and thus far not brought under the laws of the Union or of the State within whose limits they resided.'

*McClanahan*, 411 U.S. at 173, 93 S.Ct. at 1262-63 (quoting *United States v. Kagama*, 118 U.S. 375, 381-82, 6 S.Ct. 1109, 1112, 30 L.Ed. 228 (1886)); *see also Hicks*, 533 U.S. at 361-62, 121 S.Ct. at 2311 (quoting U.S. Dept. of Interior, Federal Indian Law 510, and n. 1 (1958)) ("'Ordinarily,' it is now clear, 'an Indian reservation is considered part of the territory of the State.'").

[¶68]  Because the Wind River Indian Reservation is neither a state nor a country, there is no basis under the borrowing statute to apply the LOC statute of limitations.

## 2.      <u>Doctrine of Lex Loci Delicti</u>

[¶69]  Defendants argue that if the borrowing statute does not apply, the doctrine of lex loci delicti mandates application of the LOC statute of limitations.  We again disagree.

[¶70]  Under the doctrine of lex loci delicti, "the law of the place where the tort or wrong has been committed, is the law that governs and is to be applied with respect to the ***substantive phases*** of torts or the actions therefor." *Boutelle v. Boutelle*, 2014 WY 147, ¶ 13, 337 P.3d 1148, 1153 (Wyo. 2014) (quoting *Jack v. Enterprise Rent-A-Car Co. of Los Angeles*, 899 P.2d 891, 894 (Wyo.1995)) (emphasis added).  We have also observed:

> At common law, the limitation period of the forum jurisdiction, the lex fori, generally controlled the time within which causes of action had to be pursued, regardless of the fact that the cause itself in all its elements may have accrued outside the forum jurisdiction. Only when the limitation of action statute of the foreign jurisdiction in which the cause arose could be deemed substantive law rather than procedural would the foreign statute be applied by the forum court. *Parish v. B.F. Goodrich Co.*, 1975, 395 Mich. 271, 235 N.W.2d 570.

*Boutelle*, ¶ 9, 337 P.3d at 1152 (quoting *Duke v. Housen*, 589 P.2d 334, 341–42 (Wyo. 1979)); *see also Duke*, 589 P.2d at 342 (agreeing that but for Wyoming's borrowing statute dating back to territorial laws, the statute of limitations of the place where the action is brought, rather than where the cause of action arose would apply).

[¶71]  Defendants have offered no reason that the LOC statute of limitations should be treated as substantive rather than procedural law.  We therefore reject application of the doctrine of lex loci delicti, which as we noted above, calls only for application of the substantive law of the jurisdiction where the cause of action arose.

**3.      Full Faith and Credit**

[¶72]  As their final argument, Defendants argue that because Wyoming law requires that full faith and credit be afforded the Tribal Court's judgment, we must apply the LOC statute of limitations.  This argument fails because the question before the Tribal Court was whether the LOC two-year statute of limitations barred Plaintiff's action in that forum.  The Tribal Court was not asked to weigh in on the question whether the LOC statute of limitations would apply in the Wyoming court, and the question was not considered or answered by the Tribal Court.  There is therefore no full faith and credit issue in this case.

**CONCLUSION**

[¶73]  The district court has subject matter jurisdiction over this action and properly concluded that Plaintiff's action was timely filed under Wyoming's four-year statute of limitations.  Affirmed.

**BURKE, Chief Justice**, dissenting.

[¶74] I respectfully dissent. I would conclude that a Wyoming district court lacks subject matter jurisdiction over a tort action brought by a non-Indian plaintiff against enrolled tribal member defendants to recover damages for injuries sustained in a motor vehicle collision that occurred on a state highway within the boundaries of the Wind River Reservation. Consequently, I would reverse the decision of the district court.

[¶75] My principal departure from the majority's analysis arises from its conclusion that the status of the tribal member as a defendant is irrelevant. According to the majority, "the alignment of the parties is not material to our analysis and does not change the outcome." I disagree. "'[I]t is the membership status of the unconsenting party . . . that counts as the primary jurisdictional fact.'" *Smith v. Salish Kootenai College*, 434 F.3d 1127, 1131 (9th Cir. Mont. 2006) (quoting *Nevada v. Hicks*, 533 U.S. 353, 382, 121 S.Ct. 2304, 2322, 150 L.Ed.2d 398 (2001) (Souter, J., concurring)). The tribal membership of the defendants in this case is critical to the jurisdictional analysis.

[¶76] The foundation on which this decision should rest is *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). In that case, a non-Indian plaintiff sued a tribal member in state court to collect a debt incurred on the reservation. *Id.*, 358 U.S. at 217-18, 79 S.Ct. at 269. The Supreme Court set forth this test: "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Id.*, 358 U.S. at 220, 79 S.Ct. at 271. It concluded: "There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.*, 358 U.S. at 223, 79 S.Ct. at 272.

[¶77] We applied *Williams* in *State ex rel. Peterson v. District Court of the Ninth Judicial Dist.*, 617 P.2d 1056 (Wyo. 1980). Factually, *Peterson* is very similar to the present case. It involved a suit commenced in state court against a tribal member to recover damages arising from an accident that occurred on a state highway within the boundaries of the reservation. The procedural posture of *Peterson* was unusual and underscores the importance of the issue presented in this case. In *Peterson*, the defendant tribal member filed a petition for a writ of prohibition requesting that this Court invoke its original jurisdiction under Article 5, Section 3 of the Wyoming Constitution. We granted the petition "to prevent the district court from exercising subject-matter jurisdiction forbidden to it by federal law and to prevent the petitioner from having to defend this action in the state court system, as well as in the tribal court system." *Id.*, 617 P.2d at 1057.

[¶78] Recognizing that the issue of subject matter jurisdiction in the case was a question of federal law, we proceeded to review the analysis set forth in *Williams* and "later

30

decisions which give flesh to the *Williams* skeleton." *Id.*, 617 P.2d at 1063. We interpreted *Fisher v. District Court*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976), to mean that "where a tribal court is established to handle a dispute involving reservation Indians, concurrent state jurisdiction is an interference with tribal self-government." *Peterson*, 617 P.2d at 1068. Ultimately, we were "persuaded by [our] review of United States Supreme Court cases" that the tribal court had jurisdiction over the case, and the state district court did not. *Id.*, 617 P.2d at 1069. The same conclusion should be reached in this case.

[¶79] I am unconvinced by the majority's effort to distinguish this case from *Peterson* based on the identity of the plaintiff. All of the parties in *Peterson* agreed that the plaintiff, a non-Indian insurance company, was the real party in interest, and we acknowledged that the case was "formally between a non-Indian and an Indian." *Id.*, 617 P.2d at 1058. The majority did find it "significant" that the case "would, of necessity, involve evaluation of the conduct (for purposes of ascertaining negligence) of two Reservation Indians on the Reservation." However, close review of the cases we cited in *Peterson* reveals that the identity of the plaintiff was not the deciding factor.

[¶80] In *Williams*, 358 U.S. 217, 79 S.Ct. 269, the plaintiff was "not an Indian." The defendant was a tribal member. In *Fisher*, 424 U.S. at 383, 96 S.Ct. at 944, "all parties [were] members of the Tribe." As for *Kennerly v. District Court*, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971), we observed in *Peterson* that "[w]e are not told whether the [plaintiff] grocer was also Indian." *Peterson*, 617 P.2d at 1064. However, we said it was "worthwhile to consider [*Kennerly*] in detail since it illustrates how stringently the United States Supreme Court protects reservation Indians from the exercise of state court jurisdiction when the cause of action arises on a reservation ***and involves Indian defendants***." *Id.* (emphasis added). Despite the differing or unknown identities of the plaintiffs in these three cases, the results were the same: the state courts lacked jurisdiction. The result in *Peterson* would have been the same regardless of the identity of the plaintiff. "It is immaterial that respondent [plaintiff] is not an Indian." *Williams*, 358 U.S. at 223, 79 S.Ct. at 272. It does matter, however, if the defendant is a tribal member. In all of the cases just referenced, the defendant was a tribal member, and in all of those cases it was determined that the state court lacked subject matter jurisdiction.

[¶81] The United States Supreme Court, in *Nevada v. Hicks*, 533 U.S. 353, 121 S.Ct. 2304, recognized that the tribal status of the defendant is key to the jurisdictional analysis. Justice Souter, joined by Justices Kennedy and Thomas, wrote:

> [I]t is undeniable that a tribe's remaining inherent civil jurisdiction to adjudicate civil claims arising out of acts committed on a reservation depends in the first instance on the character of the individual over whom jurisdiction is

claimed. . . . It is the membership status of the unconsenting party . . . that counts as the primary jurisdictional fact.

*Id.*, 533 U.S. at 381-82, 121 S.Ct. at 2322 (Souter, J., concurring). Justice O'Connor, joined by Justices Stevens and Breyer, placed the holding in perspective:

> Today, the Court finally resolves that *Montana v. United States,* 450 U.S. 544, [101 S.Ct. 1245,] 67 L.Ed.2d 493 (1981), governs a tribe's civil jurisdiction over nonmembers regardless of land ownership. *Ante,* at 4-6. This is done with little fanfare, but the holding is significant because we have equivocated on this question in the past. . . . Given the facts of *Montana*, it was not clear whether the status of the persons being regulated, or the status of the land where the hunting and fishing occurred, led the Court to develop *Montana*'s jurisdictional rule and its exceptions.

*Id.*, 533 U.S. at 387, 121 S.Ct. at 2324-25 (O'Connor, J., concurring in part and concurring in the judgment). The unconsenting parties in our case are the defendants, who are both tribal members.

[¶82] It is true that *Hicks* concerned tribal jurisdiction and the *Montana* test. But as the majority notes, *Williams* and *Montana* analyses are "merely different formulations of the same underlying concept." *Cordova v. Holwegner*, 971 P.2d 531, 537 (Wash. Ct. App. 1999). Whether determining state court jurisdiction over Indian defendants or tribal court jurisdiction over non-Indians for actions arising within the boundaries of a reservation, the tribal status of the defendant is the "primary jurisdictional fact."

[¶83] Our decision in *Boller v. Key Bank*, 829 P.2d 260 (Wyo. 1992), does not undermine that conclusion. In *Boller*, we upheld state court subject matter jurisdiction over a foreclosure action brought by a non-Indian bank against a tribal member. *Id.*, 829 P.2d at 264. According to the majority, "we rejected the argument that *Peterson* was controlling and distinguished it on grounds that: '(1) both parties in the *Peterson* case were enrolled Indians, * * * and (2) the entire incident in *Peterson* took place within the interior boundaries of the Reservation.' *Id.* at 264." That analysis is only partially accurate. The *Boller* court distinguished *Peterson* on both the "law and facts." *Boller*, 829 P.2d at 264. While we did set forth the factual distinction provided above, the more significant distinction was a legal one. "The [*Peterson*] court held that Congress had not granted jurisdiction to the state and that such grant was necessary for state jurisdiction. This case concerns fee patented land for which Congress **has** granted jurisdiction to the state through the General Allotment Act." *Boller*, 829 P.2d at 264 (emphasis in original). In this case, as in *Peterson*, Congress has not granted jurisdiction to the state courts.

32

[¶84] I would follow *Williams* and *Peterson* to conclude that the state court lacks jurisdiction in the case before us. The majority relies instead on *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) and *Strate v. A-1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). I am convinced that these cases are inapplicable here. The question before us is whether the state court has subject matter jurisdiction over a suit against two defendants who were enrolled tribal members when the accident occurred within the boundaries of the reservation. In contrast, *Montana* concerned "the sources and scope of the power of an Indian tribe to regulate hunting and fishing by non-Indians on lands within its reservation owned in fee simple by non-Indians." *Id.*, 450 U.S. at 547, 101 S.Ct. at 1249.

[¶85] The limitations of *Montana* are highlighted repeatedly in *Strate*. The Court in *Strate* specified that neither party to the litigation was an Indian. *Id.*, 520 U.S. at 442, 117 S.Ct. at 1407. It stated the narrow question before it: "This case concerns the adjudicatory authority of tribal courts over personal injury actions against defendants who are not tribal members." *Id.* Its holding was equally narrow: "[T]ribal courts may not entertain claims against nonmembers arising out of accidents on state highways, absent a statute or treaty authorizing the tribe to govern the conduct of nonmembers." *Id.*, 520 U.S. at 442, 117 S.Ct. at 1408. Moreover, it reiterated the significant but limited nature of its decision in *Montana*: "*Montana v. United States* . . . is the pathmarking case concerning ***tribal civil authority over nonmembers***." *Strate*, 520 U.S. at 445, 117 S.Ct. at 1409 (emphasis added).

[¶86] The majority also misapplies *Strate* to reach a conclusion about the status of the highway where the accident occurred. In *Strate*, as in the case before us, the accident took place on a state highway within the boundaries of the reservation. In *Strate*, the Supreme Court concluded that the highway was the equivalent of alienated, non-Indian land. Critical to that conclusion, however, was the fact that none of the parties were tribal members. As the court observed, "civil authority of Indian tribes and their courts with respect to non-Indian fee lands generally 'does not extend to the activities of nonmembers of the tribe.'" *Strate*, 520 U.S. at 453, 117 S.Ct. at 1413 (quoting *Montana*, 450 U.S. at 565, 101 S.Ct. at 1258). Accordingly, it ruled that "The right-of-way North Dakota acquired for the State's highway renders the 6.59-mile stretch equivalent, ***for nonmember governance purposes***, to alienated, non-Indian land." *Strate*, 520 U.S. at 454, 117 S.Ct. at 1413 (emphasis added; footnote omitted).

[¶87] The majority has ignored the significant limitation explicitly stated in *Strate*. It never explains how it makes the leap from the Supreme Court's characterization of the state highway as alienated non-Indian land "for nonmember governance purposes" to its conclusion that the state highway is "non-Indian fee land." Instead of recognizing and applying the limitation set forth in *Strate*, the majority essentially concludes that the highway where the accident took place in this case is also equivalent to alienated non-Indian land for purposes of governing tribal members. The limitation placed on the

33

highway designation in *Strate* is significant and must be taken into account in our jurisdictional analysis. In this case, the defendants are tribal members. The defendants are the parties being regulated. They are the non-consenting parties. Here, we are resolving jurisdictional issues relating to tribal member governance. Tribal regulation of non-member conduct at issue in *Strate* is not present here. The question before us is the extent of state court jurisdiction over Indian defendants. *Williams* provides the correct perspective for our case. *Montana* and *Strate* do not.

[¶88] I also take issue with the majority's assertion that "Other courts have similarly concluded that the fact of a tribal member being a party to the action does not change the outcome dictated by *Strate*." In all four of the cases cited for that proposition, the courts rejected tribal court jurisdiction over actions against non-Indian defendants. One of the cases explicitly recognizes the significance of the membership status of the defendant. In *Nord v. Kelly*, 520 F.3d 848, 851 (8th Cir. Minn. 2008), the plaintiff was a tribal member, and the defendants were non-Indian. The court followed *Strate* and ruled that the tribal court lacked jurisdiction, noting that "[t]he dispute in *Strate* arose out of an accident between two non-Indians, whereas here, one party [the plaintiff] was a member. We find this to be a distinction without a difference, however, because in either case, the question is whether the tribe has jurisdiction over the nonmember [defendant]." *Nord*, 520 F.3d at 854 n.3. The *Nord* court found the identity of the plaintiff "insignificant." *Id.*, 520 F.3d at 856.

[¶89] The majority relies on *Tejesova v. Bone*, 2007 WL 1160059, * 1 (W.Dist. N.C. 2007), in which a non-Indian brought an action in federal district court against a tribal member for injuries sustained in a vehicle collision on a federal highway on the reservation. The defendant moved to dismiss, claiming that the plaintiff had failed to exhaust her remedies in Tribal Court. The district court denied the motion, ruling that the tribal court lacked jurisdiction. *Id*. at * 5. The court's analysis is not persuasive. Its decision is internally inconsistent.

[¶90] Noting that the question of tribal court jurisdiction is a question of federal law, the *Tejesova* court set forth its understanding of the United States Supreme Court's precedent on the question:

> The [Supreme] Court's recent cases . . . demonstrate that there are two facts courts look to when considering a tribal court's civil jurisdiction over a case in which a nonmember is a party. **First, and most important, is the party status of the nonmember; that is, whether the nonmember party is a plaintiff or a defendant. . . .** ***It is the membership status of the unconsenting party, not the status of real property, that counts as the primary jurisdictional fact.*** The Court has repeatedly demonstrated its concern that tribal courts not

34

> require defendants who are not tribal members to defend [themselves against ordinary claims] in an unfamiliar court. Second, the Court has placed some store in whether or not the events giving rise to the cause of action occurred within the reservation.

*Tejesova*, 2007 WL 1160059, * 3 (quoting *Smith*, 434 F.3d at 1131) (bracketed material and omissions as in *Tejesova*; emphasis added). In the remainder of the opinion, however, the court ignored the primary jurisdictional fact that the unconsenting party, the defendant, was a tribal member. The court's sole reference to party status is contained in one sentence: "Here, the Plaintiff is a nonmember and so the Court looks to the second factor, that is, 'whether the cause of action brought by these parties bears some direct connection to tribal lands.'" *Tejesova*, 2007 WL 1160059, * 3.

[¶91] The court focused almost exclusively on the location of the accident even though it recognized that the Supreme Court has placed only "some store" in that factor.[4] Essentially, the court failed to follow its own understanding of applicable federal law.[4] Although the court recognized that the party status of the "unconsenting party" was the "primary jurisdictional fact," it failed to apply that fact in its analysis. It looked only at the status of the plaintiff.

[¶92] Shortly after *Tejesova* was decided, the Cherokee Supreme Court had the opportunity to apply *Tejesova* to an accident on the same highway within the reservation. In *Crow v. Parker*, 6 Cher. Rep. 33 (N.C. Cherokee Sup. Ct. 2007), the plaintiff was a tribal member. The defendant was a non-member who sought dismissal claiming that the tribal court lacked subject matter jurisdiction. The Cherokee Supreme Court rejected the *Tejesova* analysis. The Court described the *Tejesova* decision as "an outlier." *Crow*, 6 Cher. Rep. 33, ¶ 36. It concluded that, under *Strate*, tribal status of the defendant was the determining factor: "Thus, the contention . . . that this case differs from *Strate* because the Plaintiff in this case is an enrolled member of the EBCI is without merit inasmuch as it is the status of the non-member as a party defendant which triggers the *Strate* inquiry." *Id*. Ultimately, the Cherokee Supreme Court held that the tribal court lacked subject matter jurisdiction because the defendant was a nonmember.

[¶93] The decision in *Tejesova* is also directly contrary to two appellate court decisions from other jurisdictions. Both are factually indistinguishable from the case before us. Both rejected the application of *Montana* and *Strate* to these facts, and instead relied on

---

[4] After the court denied the motion to dismiss, the tribe moved to intervene so it could "submit additional evidence and argument showing that this case should be dismissed." *Tejesova*, 2008 WL 162137, * 1 (quoting the motion to intervene). The court denied that motion, but granted the tribe's request to certify the denial of intervention for interlocutory appeal. *Id*. at * 2. The parties resolved the case by settlement while the appeal was pending, effectively preventing the tribe from pursuing its appeal. *Tejesova*, 2008 WL 2074077, at * 1.

*Williams* to conclude that state courts lack jurisdiction over actions by non-Indian plaintiffs against Indian defendants when the action arose within a reservation. I find these decisions far more persuasive than *Tejesova*.

[¶94]  In *Winer v. Penny Enterprises, Inc.*, 674 N.W.2d 9, 10 (N.D. 2004), the court held that "the district court correctly ruled it lacked subject-matter jurisdiction over this action brought by a non-Indian plaintiff against Indian defendants for damages resulting from a motor vehicle accident occurring on a state highway within the exterior boundaries of the Spirit Lake Indian Reservation." The court addressed the relevance of *Strate*:

> We are not convinced that *Strate* heralds a new analysis for determining whether a state court has jurisdiction over an action brought against an Indian arising from conduct occurring within the exterior boundaries of an Indian reservation. In W. Canby, Jr., *American Indian Law in a Nutshell*, 175-76 (3rd ed. 1998), the author offered the following observations about the Supreme Court's decision in *Strate*:
>
> > *Strate* involved only nonmembers on both sides, but it phrased the question for decision as whether a tribal court could "entertain a civil action against" nonmembers when the claim arose on a state right-of-way. *Strate*, 117 S.Ct. at 1407. It also described tribal interests very narrowly. Consequently, one court of appeals has held that a tribal court could not entertain an action by a *tribal member* against a nonmember when the claim arose on a state highway within the reservation. *Wilson v. Marchington*, 127 F.3d 805 (9th Cir. 1997), cert. denied, 523 U.S. 1074, 118 S. Ct. 1516, 140 L. Ed. 2d 669 (1998). The state accordingly had jurisdiction. If the tribal member were the defendant, however, *Williams v. Lee* would require the action to be brought in tribal court. It is not yet clear whether *Strate* forecasts erosion of that rule for non-fee lands and state rights-of-way.
>
> > We believe *Strate* does not govern this case for several reasons. Foremost, *Strate* analyzed a tribal court's jurisdiction, rather than a state court's jurisdiction, involving an action between non-Indians. When stating the highway right-of-way was equivalent to alienated, non-Indian land, the Court was careful to limit its description as applicable only

36

for "nonmember governance purposes." *Strate*, 520 U.S. at 454. *See also Strate*, at 456 (stating "we therefore align the right-of-way, *for the purpose at hand*, with land alienated to non-Indians") (emphasis added). Tribal court jurisdiction is dependent upon application of the *Montana* test, which governs an "Indian tribe['s] regulatory authority over nonmembers." *Nevada v. Hicks*, 533 U.S. 353, 358, [121 S.Ct. 2304,] 150 L.Ed.2d 398 (2001). Since *Strate* was decided, the Supreme Court has even noted that the "ownership status of land, in other words, is only one factor to consider in determining whether [tribal] regulation of the activities of nonmembers is 'necessary to protect tribal self-government or to control internal relations.'" *Hicks*, at 360. *Williams v. Lee* is "the seminal United States Supreme Court decision concerning state civil-adjudicatory authority in Indian country," Conference of Western Attorneys General, American Indian Law Deskbook, 154 (2nd ed. 1998), and state court jurisdiction was not an issue in *Strate*. The interests implicated when a non-Indian is sued are "very different from those present" when a non-Indian sues an Indian in state court over an incident occurring in Indian country. *Three Affiliated Tribes I*, 467 U.S. at 148. The United States Supreme Court has "formulated a comprehensive pre-emption inquiry in the Indian law context which examines not only the congressional plan, but also 'the nature of the state, federal, and tribal interests at state, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.'" *Three Affiliated Tribes II*, 476 U.S. at 884 (quoting *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 145, [100 S. Ct. 2578,] 65 L.Ed.2d 665 (1980).

Moreover, all of the cases relied upon by Winer which have applied the *Strate* analysis have involved situations testing tribal court jurisdiction over non-Indian defendants where the conduct occurred on a right-of-way. *See Burlington N. R.R. Co. v. Red Wolf*, 196 F.3d 1059, 1062 (9th Cir. 1999); *Wilson v. Marchington*, 127 F.3d 805, 807 (9th Cir. 1997); *Chiwewe v. Burlington N. & Santa Fe Ry. Co.*, 239 F. Supp. 2d 1213, 1215 (D. Ct. N.M. 2002); *Austin's Express, Inc. v. Arneson*, 996 F. Supp. 1269, 1271 (D. Ct. Mont. 1998). We have not found any case wherein the *Strate* analysis has been used to determine whether a state court has

jurisdiction over a tort action brought against an Indian arising on a right-of-way within the exterior boundaries of a reservation. Rather, courts have refused to apply *Strate* beyond the context in which it was decided. *See Williams v. Board of County Comm'rs*, 1998 NMCA 90, 125 N.M. 445, 963 P.2d 522, 526 (N.M. Ct. App. 1998) (summarily rejecting plaintiff's argument that *Strate* "dictates that a state court must consider the merits of his claims" because "*Strate* addressed tribal court jurisdiction" and "was independent of case law holding that Indian nations may not be sued in state courts").

If *Strate* signals a drastic departure from the state court jurisdictional principles enunciated in *Williams v. Lee* and its progeny, it is well hidden in the *Strate* decision. *Strate* is distinguishable from the situation in this case, and until the United States Supreme Court declares otherwise, we conclude Strate does not govern our analysis here.

*Winer*, 674 N.W.2d at 14-16 (emphasis in original).

[¶95] In *Hinkle v. Abeita*, 283 P.3d 877, 878 (N.M. Ct. App. 2012), a non-Indian plaintiff's claim against an enrolled member of the Pueblo involved a motor vehicle accident that occurred on a state highway within the boundaries of the Pueblo. The issue was whether the state court had subject matter jurisdiction. The court noted that, over thirty years ago in *Hartley v. Baca*, 640 P.2d 941 (N.M. Ct. App. 1981), it "resolved the exact legal issue raised in this case on nearly identical facts." *Hinkle*, 283 P.3d at 878. However, subsequent United States Supreme Court decisions, particularly *Strate*, prompted the court to "revisit the issue to determine whether evolving federal Indian Law jurisprudence and recent precedent from our own Supreme Court now require a different result." *Hinkle*, 283 P.3d at 878. The court's comprehensive analysis of federal Indian Law jurisprudence is organized under the headings "The *Montana* Line of Cases Is Limited to Determining Tribal Court Jurisdiction" and "The [*Montana*] Rule Applies Only When the Unconsenting Party is a Nonmember." *Hinkle*, 283 P.3d at 880, 882. Based on its discussion of federal precedent, it concluded that the new developments "do not alter our analysis . . . and we hereby affirm the district court's decision to dismiss for lack of subject matter jurisdiction." *Id.*, 283 P.3d at 878.

[¶96] The majority's suggestion that the decisions in *Winer* and *Hinkle* are distinguishable because they relied on state law to the exclusion of federal precedent is difficult to accept. Both relied upon federal precedent and state court decisions that

38

applied federal precedent.[5] That is no different than what the majority is attempting to do here and is the same approach that we employed in *Peterson*.

[¶97] In conclusion, I would again emphasize that this case involves a claim against tribal member defendants arising from an accident that occurred within the boundaries of a reservation. In determining whether the state court has subject matter jurisdiction, we must apply federal law. Under Supreme Court precedent, the tribal status of the non-consenting party, the defendant, is the "primary jurisdictional fact." In this case, both defendants are tribal members. I find no support in applicable federal or state precedent for the majority's conclusion that tribal status of the defendant is irrelevant to a proper jurisdictional analysis. In order to reach that conclusion, the majority extends *Strate* far beyond the express limitations of that decision. In *Strate*, both parties were "nonmembers" and the highway was deemed "non-Indian fee land" only for "non-member governance purposes." I would reaffirm and follow our decision in *Peterson* and apply the United States Supreme Court's decision in *Williams*. I would hold that the district court lacks subject matter jurisdiction.

---

[5] *See also Routh v. Miller*, 2007 Mont. Dist. LEXIS 510, ¶ 12 (Mont. Dist. Ct. 2007) (a personal injury action brought by a non-Indian plaintiff against an enrolled member of a tribe and her non-Indian husband arising out of activities occurring on trust land). The court distinguished *Montana* and *Strate*, and applied the *Williams* infringement test to conclude that the state court lacked jurisdiction. *Id.*, ¶ 14.